No. 24-10561

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

GUARDIAN FLIGHT, L.L.C.; MED-TRANS CORPORATION,

*Plaintiffs-Appellants*

v.

HEALTH CARE SERVICE CORPORATION,

*Defendant-Appellee*

On Appeal from the United States District Court
for the Northern District of Texas, Hon. Jane J. Boyle
Case No. 3:23-cv-01861-B

**PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING EN BANC**

Adam T. Schramek
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard
Suite 1100
Austin, TX 78701
(512) 474-5201
adam.schramek@nortonrosefulbright.com

Charlotte H. Taylor
  *Counsel of Record*
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3872
ctaylor@jonesday.com

Alexa R. Baltes
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
(312) 269-4143
abaltes@jonesday.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

No. 24-10561, *Guardian Flight, LLC and Med-Trans Corporation v. Health Care Service Corporation*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiff-Appellant: **Guardian Flight, LLC**, is a wholly-owned subsidiary of Global Medical Response, Inc. through a holding company, Air Medical Group Holdings Company LLC.

2. Plaintiff-Appellant: **Med-Trans Corporation**, is a wholly-owned subsidiary of Global Medical Response, Inc. through a holding company, Air Medical Group Holdings Company LLC.

3. Defendant-Appellee: **Health Care Service Corporation**

4. Amicus Curiae: **American Hospital Association**

5. Amicus Curiae: **American Medical Association**

6. Amicus Curiae: **Federation of American Hospitals**

7. Amicus Curiae: **Texas Medical Association**

8. Amicus Curiae: **United States of America**

9. Amicus Curiae: **America's Health Insurance Plans**

The following law firms and counsel have participated in this case, either in the district court or on appeal:

| **Defendant-Appellee** | **Counsel** |
|---|---|
| Health Care Service Corporation | Raymond A. Cardozo<br>REED SMITH, L.L.P.<br>101 2nd Street<br>Suite 2000<br>San Francisco, CA 94105<br><br>Martin J. Bishop<br>REED SMITH, L.L.P.<br>2850 N Harwood St.,<br>Suite 1500<br>Dallas, TX 75201<br><br>Jason Mayer<br>REED SMITH, L.L.P.<br>10 S. Wacker Drive<br>40th Floor<br>Chicago, IL 60606-7507<br><br>Colin E. Wrabley<br>Michael J. McCune<br>REED SMITH, L.L.P.<br>Reed Smith Centre<br>225 Fifth Avenue, Suite 1200<br>Pittsburgh, PA 15222 |

| **Plaintiffs-Appellants** | **Counsel** |
|---|---|
| Guardian Flight, LLC & Med-Trans Corporation | Charlotte H. Taylor<br>JONES DAY<br>51 Louisiana Ave. NW<br>Washington, DC 20001 |
| | Alexa R. Baltes<br>JONES DAY<br>110 N. Wacker Dr., Suite 4800<br>Chicago, IL 60606 |
| | Adam T. Schramek<br>NORTON ROSE FULBRIGHT US LLP<br>98 San Jacinto Boulevard<br>Suite 1100<br>Austin, TX 78701 |
| | Abraham Chang<br>Dewey Jude Gonsoulin, III<br>NORTON ROSE FULBRIGHT US LLP<br>1550 Lamar St.<br>Suite 2000<br>Houston, TX 77010-3095 |
| **Amicus Curiae** | **Counsel** |
| American Hospital Association, American Medical Association, Federation of American Hospitals & Texas Medical Association | James E. Tysee<br>Kelly M. Cleary<br>Kristen E. Loveland<br>AKIN GUMP STRAUSS HAUER FELD LLP<br>2001 K. Street N.W.<br>Washington, DC 20006 |

| **Amicus Curiae** | **Counsel** |
|---|---|
| United States of America | Brian M Boynton<br>Joshua M. Salzman<br>Kevin B. Soter<br>U.S. DEPARTMENT OF JUSTICE<br>Civil Division, Appellate<br>Section, Room 7222<br>950 Pennsylvania Ave NW<br>Washington, DC 20530<br><br>Seema Nanda<br>Wayne R. Berry<br>Jeffrey M. Hahn<br>Isidro Mariscal<br>U.S. DEPARTMENT OF LABOR<br>200 Constitution Ave NW,<br>N4511<br>Washington, DC 20210 |

| **Amicus Curiae** | **Counsel** |
|---|---|
| America's Health Insurance Plans | Hyland Hunt<br>Ruthanne M. Deutsch<br>DEUTSCH HUNT PLLC<br>300 New Jersey Ave. NW,<br>Suite 300<br>Washington, DC 20001<br><br>Julie S. Miller<br>Thomas M. Palumbo<br>AMERICA'S HEALTH<br>INSURANCE PLANS<br>601 Pennsylvania Ave. NW<br>South Building, Suite 500<br>Washington, DC 20004 |

Certificate 4

Dated:  June 26, 2025

<u>*/s/ Charlotte H. Taylor*</u>
Charlotte H. Taylor

*Counsel for Plaintiffs-Appellants*

## **RULE 40(b)(2) STATEMENT**

Congress passed the No Surprises Act ("NSA") to take patients out of the middle of payment disputes over out-of-network emergency medical care by establishing an efficient independent-dispute-resolution ("IDR") process. That process culminates in a "binding" award dictating what insurers "shall" pay to providers within 30 days. Guardian Flight and Med-Trans ("the Providers") are air-ambulance providers who, after being underpaid for 33 transports of Health Care Service Corporation ("HCSC") beneficiaries, obtained binding IDR awards against HCSC. But HCSC flouted its obligation to pay. So the Providers sued to enforce their right to payment. The district court dismissed the Providers' claims, and the Panel affirmed.

According to the Panel, there is no way for the Providers to enforce binding IDR awards: the NSA lacks a private right of action and the Providers lack standing to bring a derivative ERISA-benefits claim. The Panel's erroneous opinion warrants en banc review.

*First*, the Panel's conclusion that the NSA lacks a private right of action conflicts with Supreme Court precedent. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), says that "statutory intent" is determinative of the private-right-of-action question. *Maine Community Health Options v. United States*, 590 U.S. 296, 324 & n.12 (2020), indicates that statutory "shall pay" language provides a private right

i

of action.  And *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979), reinforcing longstanding statutory interpretation principles, instructs courts to assume Congress intends the "customary legal incidents" of its chosen words. Yet the Panel ignored the clearest indications of statutory intent—the NSA's shall-pay language and the provision, imbued with well-established meaning, making IDR awards "binding" and thus enforceable.

*Second*, the Panel's holding that the Providers lack derivative standing to pursue an ERISA-benefits claim conflicts with prior decisions of this Court, necessitating en banc review.  *See Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445 (5th Cir. 2022); *North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015).  It also conflicts with decisions of other circuits, including *Mitchell v. Blue Cross Blue Shield of N. Dakota*, 953 F.3d 529 (8th Cir. 2020).

*Third*, these issues are exceptionally important.  The Panel effectively rendered the NSA's comprehensive scheme—which this Court has been careful to construe, and which supports the sustainability of life-saving medical care—null and void.  If insurers can ignore their statutory payment obligations, the NSA falls apart.  The importance of both issues presented is underscored by the support of the United States across two Administrations.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .................................... Certificate-1

RULE 40(b)(2) STATEMENT ....................................................................... i

TABLE OF AUTHORITIES ...................................................................... iv

STATEMENT OF ISSUES FOR EN BANC CONSIDERATION ........................ 1

STATEMENT OF PROCEEDINGS AND DISPOSITION ................................. 1

STATEMENT OF THE FACTS ................................................................... 1

    A.    The NSA ................................................................................... 1

    B.    HCSC's Refusal to Pay .............................................................. 3

    C.    The Decision Below .................................................................. 3

    D.    The Panel Decision ................................................................... 3

REASONS FOR GRANTING EN BANC REVIEW ...................................... 4

I.    THE PANEL'S ERRONEOUS HOLDING THAT THE NSA LACKS A PRIVATE
    RIGHT OF ACTION CONFLICTS WITH SUPREME COURT PRECEDENT. ............... 4

    A.    The Panel's failure to consider the NSA's shall-pay language
        conflicts with the Supreme Court's decision in *Maine
        Community.* ............................................................................. 5

    B.    The Panel's failure to consider the NSA's term "binding"
        conflicts with the Supreme Court's decisions *Transamerica* and
        *Sandoval.* ............................................................................... 6

    C.    The textual analysis offered badly misinterpreted the NSA and
        accentuates the conflicts above. .............................................. 7

II.    THE PANEL'S ERISA STANDING DECISION CONFLICTS WITH THIS
    COURT'S PRIOR DECISIONS AND DECISIONS OF SEVERAL OTHER
    CIRCUITS. ................................................................................... 9

    A.    The Panel opinion conflicts with this Court's *North Cypress*
        and *Denning* decisions. ............................................................ 9

    B.    The Panel opinion conflicts with decisions in several circuits on
        an important question ............................................................. 11

III.    THE PETITION PRESENTS ISSUES OF EXCEPTIONAL IMPORTANCE. ............... 14

CONCLUSION ..................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ........................................................................5, 6

*Attias v. CareFirst, Inc.,*
    346 F.R.D. 1 (D.D.C. 2024) ................................................................13

*Cheminova A/S v. Griffin L.L.C.,*
    182 F. Supp. 2d 68 (D.D.C. 2002) ........................................................7

*Clemens v. ExecuPharm Inc.,*
    48 F.4th 146 (3d Cir. 2022) ................................................................13

*Denning v. Bond Pharmacy, Inc.,*
    50 F.4th 445 (5th Cir. 2022) ............................................9, 10, 11, 13

*Dinerstein v. Google, LLC,*
    73 F.4th 502 (7th Cir. 2023) ..............................................................13

*Doyle v. Liberty Life Assurance Co. of Bos.,*
    542 F.3d 1352 (11th Cir. 2008) ..........................................................11

*HCA Health Servs. of Ga., Inc. v. Emp'rs Health Ins. Co.,*
    240 F.3d 982 (11th Cir. 2001) ............................................................11

*In re Henry,*
    944 F.3d 587 (5th Cir. 2019) ..............................................................11

*Kanter v. Barr,*
    919 F.3d 437 (7th Cir. 2019) ................................................................8

*Katz v. Pershing, LLC,*
    672 F.3d 64 (1st Cir. 2012) ................................................................12

*Key Tronic Corp. v. United States*,
   511 U.S. 809 (1994)..................................................................6

*Maine Community Health Options v. United States*,
   590 U.S. 296 (2020)...............................................................5, 6

*Mitchell v. Blue Cross Blue Shield of N. Dakota*,
   953 F.3d 529 (8th Cir. 2020) ..............................................11, 12

*Narcisse v. Progressive Cas. Ins. Co.*,
   2025 WL 1114855 (S.D.N.Y. Apr. 15, 2025) ...............................13

*North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
   781 F.3d 182 (5th Cir. 2015) .............................9, 10, 11, 13

*Sekhar v. United States*,
   570 U.S. 729 (2013)..................................................................7

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
   770 F.3d 1282 (9th Cir. 2014) ................................................11

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...........................................................12, 13

*Springer v. Cleveland Clinic Emp. HealthPlan Total Care*,
   900 F.3d 284 (6th Cir. 2018) ...............................................11, 13

*Sverdrup Corp. v. WHC Constructors, Inc.*,
   989 F.2d 148 (4th Cir. 1993) ...................................................6

*TMA v. HHS*,
   110 F.4th 762 (5th Cir. 2024) ................................................14

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
   444 U.S. 11 (1979)....................................................................6

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2020)...........................................................9, 12, 13

v

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus.
   & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*,
   710 F.3d 470 (2d Cir. 2013) ...............................................................................12

## STATUTES

26 U.S.C. § 9816 ...............................................................................................2

26 U.S.C. § 9817 ...............................................................................................2

29 U.S.C. § 1185e ..........................................................................................2, 9

29 U.S.C. § 1185f ..........................................................................................2, 9

42 U.S.C. § 300gg-111 ..........................................................................1, 2, 3, 6

42 U.S.C. § 300gg-112 ..........................................................................1, 2, 3, 5

42 U.S.C. § 300gg-131 .....................................................................................1

42 U.S.C. § 300gg-135 .....................................................................................1

## STATEMENT OF ISSUES FOR EN BANC CONSIDERATION

**I.**     Whether Congress provided a private right of action for Providers to enforce NSA IDR awards or instead designed an elaborate dispute-resolution system without legal effect.

**II.**     Whether plan participants are injured by HCSC's failure to cover out-of-network emergency care as provided in their ERISA plans and therefore have standing (passed to their Provider-assignees) to pursue an improper-denial-of-benefits claim.

## SUMMARY OF PROCEEDINGS AND DISPOSITION

The Providers sued HCSC under the NSA, ERISA, and Texas state law because HCSC failed to pay the Providers for providing air-ambulance services to 33 HCSC beneficiaries.  HCSC moved to dismiss, and the district court granted that motion.  The Providers timely appealed, and on June 12, the Panel affirmed.  Op. 1.

## STATEMENT OF THE FACTS

### A.     The NSA

Congress passed the NSA to efficiently and conclusively resolve insurer-provider billing disputes while protecting patients from surprise bills.[1]  *See* 42 U.S.C. §§ 300gg-111, 300gg-112, 300gg-131, 300gg-135.  The NSA requires insurers to

---

[1] This petition uses "insurers" to encompass both "group health plans" and "health insurance issuers" under the NSA. *E.g.*, 42 U.S.C. § 300gg-111(a)(1).

cover out-of-network emergency care as if it were in-network. *Id.* §§ 300gg-111(a)(1), 300gg-112(a).[2] "[N]ot later than 30 calendar days" after an out-of-network provider sends a bill, insurers must make "an initial payment or notice of denial of payment." *Id.* §§ 300gg-111(a)(1)(C)(iv)(I), 300gg-112(a)(3)(A). If unsatisfied by the payment, the provider may open a 30-day negotiation period. *Id.* §§ 300gg-111(c)(1)(A), 300gg-112(b)(1)(A). If negotiations fail, either party may initiate the NSA's arbitration-like IDR process. *Id.* § 300gg-111(c)(1)(B).

Third-party "IDR entities" resolve NSA disputes. IDR proceeds "baseball-style": each party makes an offer, and the IDR entity selects one based on statutory criteria. *Id.* §§ 300gg-111(c)(5)(A)–(C), 300gg-112(b)(5)(A)–(C). The decision conclusively determines the "out-of-network rate" and any resulting payment due from insurer to provider. *Id.* §§ 300gg-111(a)(3)(K), 300gg-111(a)(1)(C)(iv)(II), 300gg-112(a)(3)(B); Opening Br. 10 n.4.

The IDR determination is "binding upon the parties involved" and not alterable via "judicial review" except in circumscribed circumstances. *Id.* § 300gg-111(c)(5)(E)(i). Moreover, the NSA requires that payments "shall be made [by the insurer] directly to the nonparticipating provider ... not later than 30 days after the ...

---

[2] The relevant provisions of the NSA occur in triplicate in the U.S. Code, because the Act amended three statutes: the Public Health Service Act, ERISA, and the Internal Revenue Code. *See* 29 U.S.C. §§ 1185e, 1185f (ERISA); 26 U.S.C. §§ 9816, 9817 (Internal Revenue Code).

determination is made." *Id.* §§ 300gg-111(c)(6), 300gg-112(b)(6).

### B.     HCSC's Refusal to Pay

The Providers provide life-saving emergency air-ambulance services to patients across the country. ROA.7 ¶7. Here, they transported HCSC beneficiaries, who subsequently assigned their plan benefits to the Providers. ROA.5 ¶1, ROA.8 ¶12; ROA.14. Payment negotiations failed, so the parties commenced IDR. ROA.7–8 ¶¶9–12. For each claim, the IDR entity made a binding determination that HCSC must make additional payments to the Providers. ROA.8 ¶11. HCSC refused. ROA.9 ¶16. The Providers filed suit to recover the mandated payments. ROA.12 ¶30; ROA.14.

### C.     The Decision Below

The district court dismissed the Providers' claims, concluding that (1) the NSA does not confer a private right of action to enforce IDR awards, ROA.105; (2) the Providers lacked standing to bring ERISA claims in the shoes of HCSC's beneficiaries because the beneficiaries lacked standing, ROA.110–112, and (3) the Providers failed to state a claim for quantum meruit, ROA.112–115.

### D.     The Panel Decision

The Panel affirmed. It first held that the NSA does not create a private right of action. Op. 5. Instead of addressing the NSA's shall-pay provision and use of the word "binding," the Panel focused on the separate provision limiting "judicial review" of awards. Op. 5–6 (discussing § 300gg-111(c)(5)(E)(i)(II)). It further held

that the existence of HHS's general enforcement authority foreclosed private enforcement.  Op. 8–9.

The Panel next determined that because HCSC beneficiaries "would lack Article III standing if they brought an ERISA claim on their own, Providers lack standing to bring a derivative ERISA claim as their assignees."  Op. 12.  According to the Panel, the "NSA shields the beneficiaries from liability …, so the beneficiaries have not suffered … any concrete injury from HCSC's failure to cover medical bills."  Op. 11.  Even if HCSC breached its contract with the beneficiaries, its breach "does no actual harm."  *Id.*

The Panel also concluded the Providers had no quantum-meruit remedy.  Op. 12.

## REASONS FOR GRANTING EN BANC REVIEW

### I.   THE PANEL'S ERRONEOUS HOLDING THAT THE NSA LACKS A PRIVATE RIGHT OF ACTION CONFLICTS WITH SUPREME COURT PRECEDENT.

The Panel held the NSA lacks affirmative indications that Congress contemplated private enforcement of IDR awards by Providers.  Op. 4–10.  But it ignored the strong textual cues that, under Supreme Court precedent, demonstrate Congress's intent to create a private right of action: (1) insurers "shall" pay the Providers within 30 days of an IDR determination, and (2) IDR determinations are "binding."  Instead, the Panel fixated on other features of the NSA that it said "point in the opposite direction."  Op. 5.  But focusing on isolated parts of a statute and

4

ignoring others is not a proper application of *Alexander v. Sandoval*, 532 U.S. 275 (2001), and its progeny.

### A. The Panel's failure to consider the NSA's shall-pay language conflicts with the Supreme Court's decision in *Maine Community*.

The NSA mandates that payment "shall be made [by insurers] directly to the nonparticipating provider not later than 30 days after … [the] determination is made." 42 U.S.C. §§ 300gg-112(b)(6), 300gg-111(c)(6). In *Maine Community Health Options v. United States*, 590 U.S. 296 (2020), the Supreme Court explained that "[s]tatutory 'shall pay language' often reflects congressional intent 'to create both a right and a remedy,'" *id.* at 324 (citations omitted)—the necessary ingredients for a private right of action, *see Sandoval*, 532 U.S. at 286. There, the Supreme Court considered whether a statute instructing that the federal government "shall pay" insurance plans was money-mandating for purposes of the Tucker Act's immunity waiver. *See Maine Cmty.*, 590 U.S. at 300–01, 322–23. But in answering that question, the Court explained that the "money mandating inquiry" is "precisely" the same as whether a statute "displays an intent to create" a private right of action— that is, whether Congress intended "not just a private right but also a private remedy." *Id.* at 323–24 n.12. In the Court's view, "magic words explicitly inviting suit" are not necessary in either context, and "[s]tatutory 'shall pay' language" can establish a right and a remedy in both contexts. *Id.* at 323–25 & n.12; *see also id.* at 330 (Alito, J., dissenting) (concluding that the Court's analysis "infers a private right of action").

5

That position is unsurprising—indeed, "to say that A shall be liable to B is the *express* creation of a right of action." *Key Tronic Corp. v. United States*, 511 U.S. 809, 818 n.11 (1994) (quoting and agreeing with *id.* at 822 (Scalia, J., dissenting)). And it was a central feature of the Providers' argument. Opening Br. 31–32; Reply 6–7. Yet the Panel's analysis did not mention *Maine Community* or the NSA's shall-pay language, let alone attempt to reconcile them with its holding.

**B.    The Panel's failure to consider the NSA's term "binding" conflicts with the Supreme Court's decisions in *Transamerica* and *Sandoval.***

The NSA also makes an IDR determination "*binding* upon the parties involved." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I) (emphasis added). Over a century of consistent precedent—pre- and post-dating the Federal Arbitration Act's enactment—holds that when parties agree to "binding" arbitration, courts "have always been willing" to enforce resulting awards. *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 154–55 (4th Cir. 1993); *see generally* Opening Br. 32–36; Reply 7–9. In other words, in this context, the term "binding" *means* "enforceable in court."

*Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979), dictates that courts analyzing a private-right-of-action question must assume Congress intends the "customary legal incidents" of the words it chooses. *Id.* at 19. Of course, *Transamerica* is merely an example of the rule that courts respect "[s]tatutory intent." *Sandoval*, 532 U.S. at 286. As *Sandoval*'s author later noted, "where Congress

6

borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Sekhar v. United States*, 570 U.S. 729, 733 (2013) (citation omitted).

Applying that principle here, and given that use of the term "binding" "in an agreement between private parties is tantamount to consent to judicial enforcement," the Panel should have recognized that its use by Congress does "not convey a different meaning." *See Cheminova A/S v. Griffin L.L.C.*, 182 F. Supp. 2d 68, 74 (D.D.C. 2002). But the Panel failed to engage with Congress's choice of the term "binding" or with the "legal tradition and meaning of centuries of practice" that term encompasses. *See Sekhar*, 570 U.S. at 733 (citation omitted).

### C.    The textual analysis offered badly misinterpreted the NSA and accentuates the conflicts above.

The Panel offered two main reasons for holding that the NSA lacks a private right of action. Both are misguided.

*First*, the Panel viewed the NSA's limit on judicial review of IDR awards as preclusive. Op. 5–7. But as the Panel's own citations to *Black*'s *Law Dictionary* and statutes using the term "judicial review" confirm, judicial review involves review of another decisionmaker's decision to see if it should be *disturbed*. *See* Op. 6, 7. Judicial *review* is thus distinct from judicial *enforcement*. Reply 14–15. The

Panel's citations to general discussions in judicial opinions fail to refute this point. *Compare* Op. 6 *with Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting) ("judicial opinions are not statutes, and we don't dissect them word-by-word as if they were").

Indeed, read together with the provision making IDR awards "binding," the limited scope of "judicial review" reinforces rather than undermines Congress's intention that IDR awards be enforceable in court. If judicial enforcement is unavailable, "a party dissatisfied with the result of an IDR proceeding" could circumvent "the need to demonstrate to a court that any of the narrow grounds specified" for judicial review applies "by simply ignoring" the award. U.S. Br. 12. That undercuts Congress's choice to make IDR awards "binding."

*Second*, the Panel concluded that instead of providing for private enforcement, Congress empowered HHS to enforce the NSA through administrative penalties. Op. 8–9. Set aside that the United States *disclaimed* having either the authority or ability to adequately enforce binding IDR awards, U.S. Br. 13–14—another point the Panel failed to mention. The Panel's analysis still falls short.

For one thing, the Panel relied solely on *HHS's* enforcement authority, but as the Providers explained, that agency lacks jurisdiction over large swaths of IDR determinations. Reply 10–11. For another, even if HHS has jurisdiction to impose civil penalties *and* hypothetically exercises that authority, *but see* OA Recording

8

14:32–44 (it never has), that does not fulfill Congress's command that the awards are "binding." "Binding" means that each and every award is legally enforceable. *Supra* 6. And HHS lacks authority to direct payment of any award. Put differently, the chance that HHS might use some of its limited resources to eventually, indirectly pressure an insurer into paying an IDR determination does not constitute enforcement of a "binding" award.

Supreme Court authority and statutory text dictate that the NSA provides a private right of action. The Panel's contrary holding cannot stand.

## II. THE PANEL'S ERISA STANDING DECISION CONFLICTS WITH THIS COURT'S PRIOR DECISIONS AND DECISIONS OF SEVERAL OTHER CIRCUITS.

The NSA's coverage mandate—requiring that ERISA plans cover out-of-network care like in-network care, 29 U.S.C. §§ 1185e(a)(1), 1185f(a)—is a contractual term in every ERISA plan. Opening Br. 45–46; U.S. Br. 18–22, 26–27. Where, as here, insurers breach by failing to pay providers according to plan terms, participants are deprived of the benefit of their bargain. That has long been thought an injury in fact by this Court and others, assignable to providers in a derivative claim. The Panel's contrary holding, Op. 10–12, broke with that precedent.

### A. The Panel opinion conflicts with this Court's *North Cypress* and *Denning* decisions.

In *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445 (5th Cir. 2022), this Court pointed to a line of cases—including the Supreme Court's decision in *TransUnion*

9

*LLC v. Ramirez*, 594 U.S. 413 (2020), and this Court's decision in *North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015)—and declared that "traditional and recent precedent arising from both the Fifth Circuit and the Supreme Court reflect that a breach of contract is a sufficient injury for standing purposes." *Denning*, 50 F.4th at 451. Indeed, as *Denning* framed it, *North Cypress* settled the issue when it held that "a hospital provider and its patients had suffered an injury in fact due to the insurance company's failure to make payments in accordance with the policy terms" even though the patients were "'never at imminent risk of out-of-pocket expenses.'" *Id.* (citation omitted).

The Providers and their amici repeatedly pressed this point. *See, e.g.*, Opening Br. 45–48 (discussing *North Cypress*); U.S. Br. 23–26 (collecting authorities, including *Denning* and *North Cypress*, for the point that breach of contract constitutes an injury); Reply 24 (citing United States amicus brief for collected historical authorities); OA Recording at 1:50–2:15 (arguing that a breach of contract like HCSC's confers injury for standing purposes, "as this Court held in *Denning* relying on its *North Cypress* case").

Yet the Panel held that the contractual breach suffered by the beneficiaries in whose shoes the Providers stand was, at most, a "technical violation" that "does no actual harm to the beneficiaries and is consequently an abstract theory insufficient for Article III injury." Op. 11. The Panel did not mention *North Cypress* or *Denning*.

The closest the Panel came to acknowledging its about-face was a footnote—citing only a Sixth Circuit decision—stating that the many cases coming out the other way on this specific "ERISA issue" "predate[] the NSA and [are] therefore inapposite." Op. 12 n.9. But that reasoning (1) does not address *Denning*, (2) overlooks that the NSA could not alter constitutional standing requirements; and most importantly, (3) runs headlong into this Court's "rule of orderliness," whereby one panel may not overrule a prior panel decision unless unequivocally directed to do so by controlling Supreme Court precedent. *In re Henry*, 944 F.3d 587, 591 (5th Cir. 2019). The Panel's silent abandonment of *North Cypress* and *Denning* is reason alone for en banc review.

**B.    The Panel opinion conflicts with decisions in several circuits on an important question.**

As the Providers explained, Opening Br. 46–47; Reply 24, prior to the Panel's decision, every circuit that considered the question concluded that an insurer's failure to pay a provider according to a patient's plan terms inflicts a cognizable injury on the patient, even absent risk of financial harm. *See N. Cypress*, 781 F.3d at 192–94; *Mitchell v. Blue Cross Blue Shield of N. Dakota*, 953 F.3d 529, 536 (8th Cir. 2020); *Springer v. Cleveland Clinic Emp. HealthPlan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014); *HCA Health Servs. of Ga., Inc. v. Emp'rs Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001), *overruled on other*

11

*grounds by Doyle v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1352 (11th Cir. 2008). According to those decisions, a provider standing in the patient's shoes via assignment has standing too.

Again, the Panel brushed aside that groundswell of authority solely because the cases "predate[] the NSA." Op. 12 n.9. To the extent the Panel intended to suggest that those decisions would have come out differently if balance billing had been proscribed (as it is under the NSA), that is wrong. Even where a provider maintained a legal right to payment from participants, the courts' analyses did not turn on that fact. *See* Reply 25. Moreover, in at least one case, the provider was already legally proscribed, by agreement, from balance billing, *see Mitchell*, 953 F.3d at 534; Reply 24–25, so that case is not distinguishable.

The consensus rule is sound. The ERISA-standing issue is a specific instance of the broader question whether breach of contract, standing alone, constitutes an injury for standing purposes. And the circuits listed above, as well as others, hold that it does. *See also, e.g.*, *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 475 (2d Cir. 2013); *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012). That is consistent with the Supreme Court's decisions in *TransUnion* and *Spokeo*, both of which acknowledge that intangible harms "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" supply

Article III injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)). Breach of contract is such a harm. *See, e.g.*, *Springer*, 900 F.3d at 292–93 (6th Cir. 2018) (Thapar, J., concurring) (collecting authority); Reply 24; U.S. Br. 23–24.

To be sure, that view is not universal. The Seventh Circuit, for example, has held that breach of contract is insufficient to establish injury. *See Dinerstein v. Google, LLC*, 73 F.4th 502, 522 (7th Cir. 2023). But the momentum remains with this Court's earlier decisions in *Denning* and *North Cypress*. *See, e.g.*, *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 161 (3d Cir. 2022) (Phipps, J., concurring) (breach of contract is a "traditional cause[] of action that w[as] recognized as well suited for judicial resolution at the time of the Constitution's adoption" and suffices for standing); *Narcisse v. Progressive Cas. Ins. Co.*, 2025 WL 1114855, *7–10 (S.D.N.Y. Apr. 15, 2025) (thorough account of current legal landscape); *Attias v. CareFirst, Inc.*, 346 F.R.D. 1, 7–11 (D.D.C. 2024) (same).

In short, many thoughtful jurists have held that breach of contract alone is an injury conferring standing. Even if those jurists are wrong and it is time to revisit *North Cypress* and *Denning*, that is a task for the full Court sitting en banc.

13

III.   **The Petition Presents Issues of Exceptional Importance.**

The NSA represents Congress's solution to the serious problem of surprise medical bills.   When it designed the scheme, Congress carefully balanced the interests of insurers and providers.

This Court has been at the forefront of construing this novel statutory scheme. In particular, it has recognized that "it would distort the statutory scheme" to "place a thumb on the scale in favor of the insurer-determined [qualified payment amount ("QPA")]."   *TMA v. HHS*, 110 F.4th 762, 777 (5th Cir. 2024).   And it recently granted rehearing en banc to address whether the NSA permits an agency rule allowing insurers to use accounting tactics that artificially depress their QPAs. *See TMA v. HHS*, No. 23-40605 (5th Cir. May 30, 2025), ECF No. 177-2.

If the Panel opinion stands, Congress's scheme will be gutted, and this Court's careful work honoring the statutory balance will be for naught.   Insurers will know they can pay any amount—their QPA, or something much lower—and then ignore a subsequent IDR award in the provider's favor, betting that administrative pressure is unlikely.   There will be a brick, not a thumb, on the insurers' side of the scale.

The impact will not be limited to air-ambulance providers.   The NSA channels thousands of hospitals and physicians through IDR for exclusive determination of their right to payment for emergency care.   Rural hospitals and other emergency providers have little margin for error in their finances, and providers already face an

epidemic of insurer non-payment.  AHA Amicus Br. 20–26.  Indeed, one survey indicates that even before the Panel opinion rejecting the enforceability of IDR awards, *over half* of IDR awards were going unpaid.  *Id.* at 20.  That number can be expected to increase dramatically if the Panel's ruling stands, which will push providers past the breaking point and reduce the availability of emergency healthcare for the very patients the NSA intended to protect.

The importance of the issues raised by this petition is underscored by the United States, which—across two Administrations—submitted an *amicus* brief and presented oral argument supporting the Providers.  In the United States' words, "[i]f there were no private means to enforce IDR awards, one of the statute's core features would be frustrated, upending Congress's scheme."  U.S. Br. 1.  The Panel ignored the United States' submission.

## CONCLUSION

For the foregoing reasons, the Court should grant en banc review.

June 26, 2025

Adam T. Schramek
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
(512) 474-5201
adam.schramek@nortonrosefulbright.com

Respectfully submitted,

*/s/ Charlotte H. Taylor*
Charlotte H. Taylor
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939
ctaylor@jonesday.com

Alexa R. Baltes
JONES DAY
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
(312) 269-4143
abaltes@jonesday.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I certify that on June 26, 2025 I served a copy of the foregoing on all counsel of record by CM/ECF.


Dated:  June 26, 2025

*/s/ Charlotte H. Taylor*
Charlotte H. Taylor

*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the type-volume, typeface, and type-style requirements of Federal Rules of Appellate Procedure 40(d)(3)(A), 32(a)(5)–(6), and Fifth Circuit Rules 32.2 & 40.2.5.  The brief contains 3,898 words and was prepared using Microsoft Word and produced in Times New Roman 14-point font.

I further certify that: (1) any required privacy redactions have been made; (2) the electronic submission of this document is an exact copy of any corresponding paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated:  June 26, 2025

*/s/ Charlotte H. Taylor*
Charlotte H. Taylor

*Counsel for Plaintiffs-Appellants*

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 12, 2025

Lyle W. Cayce
Clerk

No. 24-10561

---

Guardian Flight, L.L.C.; Med-Trans Corporation,

*Plaintiffs—Appellants,*

*versus*

Health Care Service Corporation,

*Defendant—Appellee.*

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-1861

---

Before Smith, Clement, and Duncan, *Circuit Judges.*

Stuart Kyle Duncan, *Circuit Judge*:

Appellants Guardian Flight, LLC, and Med-Trans Corporation, two air ambulance providers ("Providers"), appeal the dismissal of their complaint against Appellee Health Care Service Corporation ("HCSC") for HCSC's alleged failure to timely pay dispute resolution awards under the No Surprises Act ("NSA"). Because we agree with the district court that the NSA does not contain a private right of action, and because Providers have failed to allege facts sufficient to state a derivative claim under the Employee Retirement Income Security Act ("ERISA") or for quantum meruit under Texas law, we affirm.

No. 24-10561

I

A

Congress enacted the NSA in 2022 to protect patients from surprise medical bills incurred when they receive emergency medical services from out-of-network healthcare providers. *See* 42 U.S.C. §§ 300gg-111, 300gg-112. The NSA achieves this by, *inter alia*, relieving patients from financial liability for surprise bills and creating an Independent Dispute Resolution ("IDR") process for billing disputes between providers and insurers. *Id.* § 300gg-111(c)(1)–(5); *see generally Tex. Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 110 F.4th 762, 767–78 (5th Cir. 2024) (discussing the NSA).[1]

Under the IDR provisions, the provider and insurer first try to agree on a price for the services. *Id.* § 300gg-111(c)(1)(A). If the negotiation fails, the provider or payor has four days to initiate IDR proceedings. *Id.* § 300gg-111(c)(1)(B). If the parties pursue IDR, either the parties or the Department of Health and Human Services ("HHS") selects a certified independent dispute resolution entity ("CIDRE") to referee. *Id.* § 300gg-111(c)(4).

The CIDRE determines the amount the payor owes the provider. *Id.* § 300gg-111(c)(5). The CIDRE sets that amount via "baseball-style" dispute resolution where the provider and insurer each submit an offer, and the CIDRE selects one party's offer as the award. *Id.* §§ 300gg-112(b)(5). In selecting which offer to award, the CIDRE must consider the insurer's "qualifying payment amount," a heavily regulated rate that reflects the "median of the contracted rates recognized by the plan or issuer . . . for the

---

[1] The regulations invalidated by *Texas Medical Association* have no effect on this case.

same or a similar item or service" offered in the same insurance market and geographic area. *Id.* § 300gg-111(a)(3)(E)(i).

In the absence of a fraudulent claim or evidence of a misrepresentation of facts to the CIDRE, the IDR award "shall be binding upon the parties involved," and payment of the award "shall be made . . . not later than 30 days after the date on which such determination is made." *Id.* § 300gg-112(b)(5)(D) (incorporating 42 U.S.C. § 300gg-111(c)(5)(E)); *id.* § 300gg-112(b)(6). Patients are not involved in open negotiations or the IDR process, and payors are directed to issue any IDR award payments directly to the provider. *See id.* § 300gg-112(b)(1)(A), (b)(5)(B), (b)(6).

The NSA also provides that an IDR award "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a)" of the Federal Arbitration Act ("FAA"). *Id.* §§ 300gg-112(b)(5)(D), 300gg-111(c)(5)(E). HHS has the authority to enforce provider and payor non-compliance with the NSA's provisions. *Id.* § 300gg-22(b)(2)(A) (providing for HHS enforcement against some payors for NSA non-compliance); *id.* § 300gg-134(b) (providing for HHS enforcement against providers for NSA non-compliance).

B

In this case, Providers initiated IDR under the NSA to resolve their billing disputes with HCSC. After IDR concluded, Providers sued HCSC alleging it (1) failed to timely pay Providers thirty-three IDR awards in violation of the NSA; (2) improperly denied benefits to HCSC's beneficiaries in violation of ERISA by failing to pay Providers; and (3) was unjustly enriched because Providers conferred a benefit on HCSC that HCSC has never paid.

The district court granted HCSC's motion to dismiss the complaint under Rule 12(b)(1) and 12(b)(6). It dismissed the NSA claim after

concluding that the NSA contains no private right of action. The court dismissed the ERISA claim for lack of standing because Providers, as assignees of HCSC's individual plan beneficiaries, did not show the beneficiaries suffered injury given that the NSA shields them from liability and removes them from the IDR process. Finally, the court dismissed Providers' quantum meruit claim because they did not perform their air ambulance services for HCSC's benefit. The district court also ruled that granting Providers leave to amend would be futile. Providers timely appealed.

## II

We review *de novo* a district court's "dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or for failure to state a claim pursuant to Rule 12(b)(6)." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013). "Legal questions relating to standing and mootness are also reviewed de novo," *ibid.*, as are questions of statutory interpretation. *Seago v. O'Malley*, 91 F.4th 386, 389 (5th Cir. 2024).

## III

Providers argue that the district court erred in dismissing their NSA, ERISA, and quantum meruit claims. We address each claim in turn.

## A

The district court correctly dismissed Providers' claim against HCSC for its failure to timely pay dispute resolution awards obtained under the NSA because the NSA provides no private right of action.

First, as the district court correctly observed, the NSA contains no express right of action to enforce or confirm an IDR award. The only right of action provided derives from the incorporated vacatur sections of Section 10(a) of the FAA—none of which applies to this dispute, as Providers concede. So, we begin with the presumption that Congress did not intend to

create any private cause of action. *Sigmon v. Sw. Airlines Co.*, 110 F.3d 1200, 1205 (5th Cir. 1997).

To overcome this presumption, Providers must show "that Congress affirmatively contemplated private enforcement when it passed the relevant statute." *Ibid.* (cleaned up); *see also Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 521–22 (5th Cir. 2002) (noting plaintiffs' "heavy burden" to "overcome the familiar presumption that Congress did not intend to create a private right of action"); *see also* Anthony J. Bellia, Jr., *Justice Scalia, Implied Rights of Action, and Historical Practice*, 92 Notre Dame L. Rev. 2077, 2090 (2017) ("[H]istorically federal courts did not supply private rights of action for federal statutory violations independently of congressional authority.").

Providers do not carry their heavy burden of showing Congress contemplated a private right of action in the NSA. Indeed, the NSA's text and structure point in the opposite direction. The NSA expressly *bars* judicial review of IDR awards *except* as to the specific provisions borrowed from the FAA (sections which, again, Providers concede are inapplicable). *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (IDR awards "*shall not be subject to judicial review*, except in a case described" in 9 U.S.C. § 10(a) (emphasis added)); *id.* § 300gg-112(b)(5)(D) (incorporating the same).[2] The district

---

[2] Those provisions authorize a court to vacate an arbitral award:

(1)  where the award was procured by corruption, fraud, or undue means;

(2)  where there was evident partiality or corruption in the arbitrators, or either of them;

(3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

No. 24-10561

court correctly reasoned that this bar on judicial review strongly suggests Congress did not insert a private right of action into the statute.

Providers counter that they seek only judicial *enforcement* of an IDR award, not judicial *review* of one. That is a distinction without a difference. The term "judicial review" is broad enough to include a court's order to enforce an IDR award. "Review" includes "[p]lenary power *to direct and instruct an agent or subordinate*, including the right to remand, modify, or vacate any action by the agent or subordinate, or to act directly in place of the agent or subordinate." *Review*, Black's Law Dictionary (12th ed. 2024) (emphasis added).[3]

Furthermore, courts interpreting other statutes, including the FAA, have held that "judicial review" includes actions that seek to confirm or enforce a dispute resolution award. *See, e.g.*, *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 611 (1993) (explaining ERISA "provides for judicial *review* of the arbitrator's decision by an action in the district court to *enforce*, vacate, or modify the award" (emphases

---

 (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4).

 [3] It follows that judicial review also encompasses the power to *vacate* IDR determinations. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) ("The Federal Arbitration Act . . . provides for expedited judicial review to confirm, vacate, or modify arbitration awards."). That disposes of the slightly different argument made in the other NSA case we decide today. *See Guardian Flight, L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*, No. 24-20051, --- F.4th --- (5th Cir. ___, 2025). As we explain in that case, the provider there asserts that the NSA's bar on judicial review does not touch a court's power to declare an IDR determination *void*. We reject that argument for the same reason we reject the Providers' argument here: it artificially narrows the term "judicial review" that Congress used in the NSA.

added)).[4] And Congress uses the term "judicial review" when referring to private causes of action. *See, e.g.*, 33 U.S.C. § 2236(b)(2) (creating private right of "action to seek judicial review"); 42 U.S.C. § 10139(c) (referring to a "civil action for judicial review").

In sum, Providers' enforcement action depends on the availability of a private right of action not present in the NSA. As a result, the NSA's plain text bars this suit. We will not find an implied right of action where Congress expressly forecloses it. *See Sigmon*, 110 F.3d at 1206 (holding a statute's "express bar" on lawsuits "compel[led] the conclusion that Congress did not intend to provide a private remedy").

Congress could have done otherwise. Section 9 of the FAA empowers courts to confirm or enforce arbitration awards, *see* 9 U.S.C. § 9, but Congress chose not to incorporate § 9 into the NSA. It incorporated only parts of § 10. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). By contrast, in other statutes, Congress *has* incorporated § 9 to create a private right of action. *See* 5 U.S.C. § 580(c) ("A final award is binding on the parties to the arbitration proceeding, and may be enforced pursuant to *sections 9 through 13 of*" the FAA (emphasis added)).[5] So, Congress knew how to create a private right of

---

[4] *See also Hall St. Assocs.*, 552 U.S. at 578 (interpreting "judicial review" in the FAA to include "confirm[ing]" an arbitral award); *Mid Atl. Cap. Corp. v. Bien,* 956 F.3d 1182, 1194 (10th Cir. 2020) (same); *Med. Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 488 (8th Cir. 2010) (same).

[5] In a 28(j) letter, Providers point out that a federal district court recently found an implied private right of action in the NSA, reasoning it would be absurd to interpret the statute otherwise. *See Guardian Flight LLC v. Aetna Life Ins. Co.*, No. 3:24-cv-680-MPS, 2025 WL 1399145, at *8–9 (D. Conn. May 14, 2025). The court also tried to explain Congress's decision to omit the FAA's express private right of action from the NSA: Unlike "binding" IDR awards, FAA arbitration awards are not self-enforcing, so an express private right of action is necessary to confirm them. *Id.* at *8. We are unconvinced. We follow the NSA's plain text and structure in concluding Congress created no general private right of action in the NSA. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). We are

action in the NSA—and has done so elsewhere—but declined to do so. *Howard Univ. Hosp. v. D.C. Dep't of Emp. Servs.*, 952 A.2d 168, 174 (D.C. 2008) ("Where a statute, with reference to one subject, contains a given provision, the omission of such [a] provision from a similar statute concerning a related subject . . . is significant to show [that] a different intention existed." (alterations in original) (quoting *Smith v. D.C. Dep't of Emp. Servs.*, 548 A.2d 95, 100 n.13 (D.C. 1988)); *Turtle Island Restoration Network v. Evans*, 284 F.3d 1282, 1296 (Fed. Cir. 2002) ("When Congress omits from a statute a provision found in similar statutes, the omission is typically thought deliberate." (citing *I.N.S. v. Phinpathya*, 464 U.S. 183, 190 (1984))); 2B Norman Singer & Shambie Singer, Sutherland Statutory Construction § 51:2 (7th ed. 2024) ("[C]ourts presume a different intent when a legislature omits words used in a prior statute on a similar subject.").

Instead, Congress took a different tack: it empowered HHS to assess penalties against insurers for failure to comply with the NSA. *See* 42 U.S.C. § 300gg-22(b)(2)(A); 45 C.F.R. § 150.301 *et seq.* The Centers for Medicare and Medicaid Services (CMS), an agency within HHS, has acted on that authority by soliciting provider complaints and compelling payors to pay IDR awards where appropriate.[6] CMS maintains an online portal through which providers may submit complaints regarding the IDR process. *See No Surprises Complaint Form*, CMS, https://perma.cc/HHD2-8HW7.

––––––––––––––––––––––

likewise unpersuaded by the district court's ERISA analysis; like Providers, the court relied on precedent that predates the NSA's enactment. *See infra* Section III.B; *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015).

[6] *See* U.S. Gov't Accountability Off., GAO-24-106335, Private Health Insurance: Roll out of Independent Dispute Resolution Process for Out-Of-Network Claims Has Been Challenging 35 (2023).

The inference from the NSA's broader structure, then, is plain. The "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001); *Sigmon*, 110 F.3d at 1206 (holding the "existence of [an] administrative scheme of enforcement is strong evidence that Congress intended the administrative remedy to be exclusive" (quotations omitted)). The NSA's structure conveys Congress's policy choice to enforce the statute through administrative penalties, not a private right of action.

Providers insist that without a private right of action, "not only would the purpose of the NSA be frustrated, the very structure of the NSA would fall apart." But our interpretation is compelled by the NSA's text and structure, both of which exclude a general private right of action. Nor does that interpretation obviously "frustrate" the NSA's purpose. Congress may have had good reasons to provide only a general administrative remedy, together with a strictly limited form of judicial review.

For example, in the first calendar year the NSA was operational, providers filed more than *thirty times* the number of IDR disputes HHS anticipated. *See* Brief for America's Health Insurance Plans as Amicus Curiae Supporting Appellee at 5–7, *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, No. 24-10561 (5th Cir. argued Feb. 24, 2025). By 2023, providers had initiated nearly 680,000 disputes. *Ibid.* Congress may have judged it better to have an administrative enforcement mechanism handle most award disputes instead of throwing open the floodgates of litigation. Understandably, Providers would prefer a different mechanism for resolving

provider-insurer disputes. But the wisdom of Congress's policy choice is beyond our judicial ken.[7]

In sum, Providers have not shown that, despite the NSA's express bar on judicial review in cases like this, Congress "affirmatively contemplated" a private right of action to enforce IDR awards.

## B

We turn next to Providers' ERISA claim, which the district court dismissed for lack of standing.

To demonstrate standing for a derivative ERISA claim as healthcare providers, Providers must first obtain an assignment of benefits from individual plan beneficiaries. *See N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 191–92. Providers satisfy this requirement, as several HCSC beneficiaries assigned their rights to Appellants.

Providers must also show, however, that the individual plan beneficiaries for whom they are assignees suffered a concrete injury, had those beneficiaries brought the claim themselves. *See Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 729 (5th Cir. 2010) ("[A]n assignee . . . stands in the same position as its assignor stood." (ellipses in original) (quoting *Houk v. Comm'r of Internal Revenue*, 173 F.2d 821, 825 (5th Cir. 1949))); *see also Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020) ("There is no ERISA exception to Article III.").

_____

[7] Amici American Hospital Association, *et al.*, suggest that declining to find an implied private right of action in the NSA "raises the question whether it is constitutional to wholly abrogate a core common-law right without providing a reasonable alternative remedy." But amici fail to present any authority that directly addresses this concern beyond mere suggestion, and, in any case, neither amici nor HCSC has explained why the NSA's administrative remedy is so inadequate as to violate the Constitution.

No. 24-10561

Providers claim the beneficiaries suffered concrete injuries when HCSC refused to provide them with out-of-network coverage benefits under the parties' contracts. We disagree. The NSA shields the beneficiaries from liability for any out-of-network coverage costs, so the beneficiaries have not suffered—and could not suffer—any concrete injury from HCSC's failure to cover medical bills that fall within the scope of the NSA.[8] Further, the beneficiaries had nothing to gain or lose in the IDR proceedings between Appellants and HCSC. That process exists entirely outside and independent of ERISA.

Providers argue the injury to beneficiaries is nonetheless cognizable because the beneficiaries have suffered a breach of contract and so have been denied a benefit of their bargain with HCSC. We disagree. This technical violation, if it amounts to one, does no actual harm to the beneficiaries and is consequently an abstract theory insufficient for Article III injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." (quoting *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 332 (7th Cir. 2019)); *Thole*, 590 U.S. at 541 ("If [plaintiffs] were to *win* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more. The plaintiffs therefore have no concrete stake in this lawsuit.").

---

[8] *See* 42 U.S.C. § 300gg-135 (non-participating air ambulance providers "shall not bill, and shall not hold liable, [the] participant, beneficiary, or enrollee for a payment amount for such service furnished by such provider" beyond the patient's cost-sharing for the service).

No. 24-10561

In short, because the beneficiaries would lack Article III standing if they brought an ERISA claim on their own, Providers lack standing to bring a derivative ERISA claim as their assignees. *See Thole*, 590 U.S. at 547.[9]

## C

Finally, the district court correctly dismissed Providers' quantum-meruit claim because they failed to allege that they provided a direct benefit to HCSC. Providers admit that Texas courts have held in other contexts that because healthcare services are undertaken for the patient's benefit, not the insurer's, the patient is the proper target of a healthcare provider's quantum-meruit claim. *See Tex. Med. Res., LLP v. Molina Healthcare of Texas, Inc.*, 659 S.W.3d 424, 437 (Tex. 2023). Providers merely argue that this is "a debatable proposition," and that the district court was "too hasty" in dismissing their quantum-meruit claim because it leaves them without a judicial remedy.

The district court was right. Providers did not render any services for HCSC's benefit. Instead they provided "air ambulance transports for [HCSC's] beneficiaries." Those beneficiaries are not plaintiffs in this case, so Providers plainly fail to allege facts that could satisfy the elements of a quantum-meruit claim under Texas law. *See Tex. Med. Res., LLP*, 659 S.W.3d at 436 ("[I]t is not enough to show that [the plaintiff's] efforts benefited [the defendant]. Rather, the plaintiff's efforts must have been undertaken *for* the person sought to be charged." (cleaned up) (emphasis and second and third

---

[9] Providers contend that every circuit to consider this ERISA issue, including this court, has determined that the beneficiary suffered a concrete injury. Not so. Each of Providers' cited cases predates the NSA and is therefore inapposite. *See, e.g.*, *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284 (6th Cir. 2018).

No. 24-10561

alterations in original) (quoting *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985))).[10]

## IV

The district court's judgment is AFFIRMED.

---

[10] The district court did not abuse its discretion in denying Providers' request for leave to amend. Providers have no cause of action under the NSA and do not explain which facts they could allege in an amended complaint to satisfy the elements of their ERISA or quantum-meruit claims. *See Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 491 (5th Cir. 2024) ("[A] 'bare bones' request to amend pleadings 'remains futile when it "fail[s] to apprise the district court of the facts that [the plaintiff] would plead in an amended complaint."'" (quoting *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017))).